IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**CATHY YONKER,**

    **Plaintiff,**

    **v.**     Case No.  05-2255-JWL

**CENTERS FOR LONG TERM CARE OF
GARDNER, INC. d/b/a Meadowbrook
Rehab Hospital LTC,**

    **Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff Cathy Yonker was formerly employed as Director of Nursing for defendant Centers for Long Term Care of Gardner, Inc. d/b/a Meadowbrook Rehab Hospital LTD (Meadowbrook). She asserts one common law claim against Meadowbrook for retaliatory discharge for whistleblowing. This matter is currently before the court on Meadowbrook's Motion for Judgment on the Pleadings (Doc. 14) for failure to state a claim upon which relief can be granted. For the reasons explained below, this motion is denied.

## BACKGROUND[1]

According to the allegations in plaintiff's complaint, plaintiff began employment as Director of Nursing for Meadowbrook in January of 2004. Meadowbrook is engaged in the business of providing care and services to individuals who have difficulty recovering from brain injuries. Lengthy patient stays are covered by Medicaid. Patients who receive this funding are part of the Traumatic Brain Injury (TBI) program through the State of Kansas. Funding is available for up to four years, with the possibility of a second four-year funding term. The funding is available on an individual basis and follows the qualifying individual whether they reside in a residential facility or live on their own in the community.

In October of 2004, plaintiff approached Scott Sutherland, the Director of Marketing and Admissions for Meadowbrook, about information plaintiff had received from Penny New, a Case Manager, and Julie Yonker, a Behavior Specialist, that patients were not to be released from the facility even if they had met treatment goals and/or requested to be released. This directive was contrary to plaintiff's understanding of state regulations governing the release of patients from rehabilitation facilities. Mr. Sutherland was aware that patients were seeking release from Meadowbrook after reaching treatment goals and that some were seeking release notwithstanding the fact that they had not reached treatment goals. Plaintiff expressed concern that a directive not to release patients from the facility violated the law and could even

---

[1] Consistent with the well established standard for evaluating a motion for judgment on the pleadings for failure to state a claim upon which relief can be granted, the court accepts as true all well pleaded factual allegations in plaintiff's first amended complaint.

constitute Medicare fraud. Mr. Sutherland told plaintiff that her concerns put her in quite a predicament.

Around this same time, plaintiff began noticing that Kelly Hall, an Activity Therapist and also the daughter of Pam Hall who is the Administrator of Meadowbrook's Gardner facility, was having attendance problems. As part of these problems, plaintiff noticed that Kelly Hall had been reporting that she spent time with patients in the TIB program even though she was absent from the building at the time she claimed to have been performing those services. Plaintiff addressed these problems with Kelly Hall several times.

On or about October 19, 2004, Pam Hall met with plaintiff and Ms. New, whose duties as Case Manager made her responsible for facilitating the release of patients from Meadowbrook's facility. Pam Hall told plaintiff and Ms. New that they were to cease discharging patients. Plaintiff said that this directive was not proper. Pam Hall replied that as long as a patient had funding, Meadowbrook could keep the patients for the entire four-year period and that Meadowbrook should at least keep patients at the facility longer than they were being kept.

Approximately a week later, plaintiff, Ms. New, and Julie Yonker attended a conference in Topeka on October 25-26, 2004. The conference was moderated by Michael Deegan, the Project Director of the state's TBI program. During a break, plaintiff met privately with Mr. Deegan to review the state's expectations for patients in the TBI program and, in particular, to determine the accuracy of her understanding of the state administrative regulations as applied to the directive regarding the non-discharge of patients at Meadowbrook's facility. Mr.

3

Deegan confirmed that plaintiff's understanding of the regulations was correct, which was that patients were not required to remain in any one facility for a full four-year period, but rather that they were to be released upon request or upon achieving his/her treatment goals. Plaintiff expressed concerns to Mr. Deegan about her job. Mr. Deegan replied that she should indeed be prepared for the possibility of a retaliatory termination. Mr. Deegan also told plaintiff that she should continue to dismiss patients as she had been.

On October 28, 2004, plaintiff spoke to Mr. Sutherland about her conversation with Mr. Deegan. Mr. Sutherland stated that he agreed with plaintiff about those issues and that he knew that plaintiff had been correct when she previously approached him. Later that same day, plaintiff spoke to Pam Hall and recounted her conversation with Mr. Deegan regarding the discharge of TBI patients. Pam Hall responded that plaintiff had better find a way to keep patients at the facility.

In approximately late October or early November, plaintiff again had an issue with Kelly Hall (again, the daughter of Pam Hall) regarding leaving work early without approval at a time when critical patient services were to be provided. Since the time when plaintiff had previously confronted Kelly Hall about the absenteeism and paperwork falsification issues, plaintiff had been approached by other staff who also were concerned about Kelly Hall's activities. Plaintiff approached Pam Hall about these concerns and Pam Hall responded that plaintiff was out of line.

During the next several weeks, approximately five patients were nearing discharge from the facility because they had either met their treatment goals or requested release. After four

4

of those patients were released, Pam Hall informed plaintiff that she needed to find a way to keep the last of those five patients at the facility "no matter what." The fifth patient and his family were requesting that he be released back to his family so that he could reside with them at their home. Ultimately, this fifth patient was discharged, again against Pam Hall's directive.

On Wednesday, November 24, 2004, Pam Hall met again with plaintiff and Ms. New. Ms. New was informed that her position was being eliminated. Ms. New had opposed Ms. Hall's instruction against the discharge of patients by working to ensure that they would be discharged pursuant to the state regulations.

Later that day, plaintiff visited with one of the patients who had received his discharge order and encouraged him to stay at Meadowbrook or at least to go somewhere else for treatment because he had not yet met all of his treatment goals. Plaintiff mentioned the name of another individual who left the facility before he was truly ready, and that it had been recently announced that he would be returning to the facility. Another person witnessed this conversation and reported plaintiff for violating patient confidentiality because she had mentioned the name of the returning patient during the conversation. On approximately November 29, 2005, Pam Hall informed plaintiff that she had been reported for violating patient confidentiality. On November 30, 2005, Pam Hall requested plaintiff's resignation. Plaintiff refused to sign a resignation but gathered her things and left the building. Plaintiff alleges that, in reality, she was terminated in retaliation for opposing Meadowbrook's illegal practices.

Plaintiff asserts one claim against Meadowbrook, which is a common law claim for retaliatory discharge for whistleblowing.  Meadowbrook now asks the court to dismiss plaintiff's claim on the grounds that she admits in her complaint that she was terminated for violating a patient's confidentiality rights.

### STANDARD FOR A MOTION FOR JUDGMENT ON THE PLEADINGS

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure is analyzed under the same standard that applies to a Rule 12(b)(6) motion. *Society of Separationists v. Pleasant Grove City*, 416 F.3d 1239, 1241 (10th Cir. 2005). Thus, judgment on the pleadings is appropriate only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claims which would entitle [her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir. 2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive, *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quotation omitted).

### DISCUSSION

6

Kansas follows the employment-at-will doctrine whereby an employer may generally terminate an employee for good cause, for no cause, or even for the wrong cause. *Goodman v. Wesley Med. Ctr., L.L.C.*, 276 Kan. 586, 589, 78 P.3d 817, 821 (2003). One recognized public policy exception to the employment-at-will doctrine is a retaliatory discharge claim for whistleblowing. *Id.* In order to prevail on such a claim, a plaintiff must show by clear and convincing evidence that (1) a reasonable person would have concluded that the employee's co-worker or employer was engaged in activities which violated rules, regulations, or the law pertaining to the public health, safety, and general welfare; (2) the employer had knowledge that the employee reported the violation before discharging the employee; and (3) the employer discharged the employee in retaliation for making the report. *Id.* at 589-90, 78 P.3d at 821. Additionally, the plaintiff "must prove that the whistleblowing was done in good faith based on a concern regarding the wrongful activity reported rather than for a corrupt motive like malice, spite, jealousy or personal gain." *Id.* at 590, 78 P.3d at 821.

The thrust of Meadowbrook's argument that plaintiff's whistleblowing claim must be dismissed is that her allegations reveal that she was terminated because she violated patient confidentiality, not because of her whistleblowing activities. Certainly, that is one permissible view of plaintiff's allegations. But, at this procedural juncture the court must draw all reasonable inferences from the allegations in the complaint in favor of plaintiff. Viewed as such, those allegations indicate that Meadowbrook was keeping patients at its facility longer than permitted under Kansas law, that plaintiff had reported that unlawful behavior to a Kansas official with the state's TBI program, that Pam Hall was aware that plaintiff had reported the

7

violation to the state official, and that the incident involving the violation of patient confidentiality provided the excuse for which Ms. Hall had been waiting to terminate plaintiff's employment. Additionally, it appears that plaintiff's whistleblowing was done in good faith based on a concern regarding the alleged violation of the state's administrative regulations. In short, viewing the allegations in plaintiff's favor, as the court must, it appears that Ms. Hall discharged plaintiff in retaliation for reporting Meadowbrook's allegedly unlawful activity to Mr. Deegan. Certainly, it does not appear beyond a doubt that plaintiff could not succeed on this theory. Accordingly, dismissal of plaintiff's claim is not warranted.[2]

**IT IS THEREFORE ORDERED BY THE COURT** that Meadowbrook's Motion for Judgment on the Pleadings (Doc. 14) is denied.

**IT IS SO ORDERED** this 2nd day of March, 2006.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

---

[2] The court rejects Meadowbrook's implicit suggestion that the court should analyze plaintiff's claim under the familiar *McDonnell Douglas* burden shifting framework. It is well established that this standard does not apply on a motion to dismiss and, by analogy, on a motion for judgment on the pleadings. *See generally Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002) (reversing district court's dismissal of employment discrimination lawsuit because *McDonnell Douglas* burden shifting framework does not apply to a Rule 12(b)(6) motion; complaint need only contain a short and plain statement showing the plaintiff is entitled to relief).